**22**

GULF OIL CORPORATION, as owner of
THE Barge TUSCARORA, Libelant,

v.

RUSSELL POLING & COMPANY,
Respondent,
Frank X. TUCKER, Mary J. Tucker and
THE Tug KATHRYN M., her engines,
boilers, etc., Respondents-Impleaded.

Admiralty No. 19362

United States District Court
E. D. New York.
Jan. 24, 1956.

Foley & Martin, New York City, for libelant, by Christopher Heckman, New York City.

Alexander & Ash, New York City, for respondent, by Edward Ash, New York City.

Macklin, Speer, Hannan & McKernan, New York City, for respondents-impleaded, by Charles J. Carroll, Jr., New York City.

RAYFIEL, District Judge.

The libelant is the owner of the barge Tuscarora, which it chartered to the respondent on the 16th day of July, 1948, for an indefinite period, at a daily rate agreed upon by the parties, with the proviso, inter alia, that the vessel was to be returned to the libelant in the same condition as when received, ordinary wear and tear excepted. Thereafter, the barge, without motive power, was delivered to the respondent, and used in its business.

The libelant claims that upon its return the barge was in a damaged condition, and not as when delivered to the respondent; and further, that said damage was not due to ordinary wear and tear, but was caused by the negligence of the respondent, its agents, servants and employees. The libelant commenced this action to recover the damages sustained by it, as aforesaid.

The respondent petitioned for leave to implead Frank X. Tucker, Mary J. Tucker and the tug Kathryn M., above-named, claiming, inter alia, that the Tuckers were the joint owners of, and operated and controlled the said tug; that on the 1st day of August, 1948, the Tuscarora was in tow of the Kathryn M.; that the crew of the tug operated her in such a careless and negligent manner as to cause the Tuscarora to collide with the Congress Street Bridge, in the City of Troy, New York. The respondent claimed, further, that the damage to the Tuscarora was not caused by any negligence or want of care on its part, or on the part of any of its agents, servants or employees, but was due solely to the fault and neglect of the respondents-impleaded, or their agents or employees who were engaged in the operation of the Kathryn M., when the Tuscarora sustained its damage.

The facts, as I find them, are as follows: shortly before 2:00 a. m. on August 1, 1948, the tug Kathryn M., in command of Kenneth Needham, its mate, was proceeding along the Hudson River in a southerly direction, with the barge

Tuscarora in tow, pushboat fashion. North of the Congress Street Bridge, in Troy, New York, there is a bend in the river (see sketch in upper left of libelant's exhibit 1), from which point it follows a slightly southwesterly course for a short distance and then resumes its generally southerly direction. Needham testified that because of the bend and the bridge abutment his view of northbound traffic was obstructed. Under those circumstances Needham was required to sound one blast of his steam whistle when his tow arrived within half a mile of the bend in the river. (See Rule V of the Pilot Rules, Title 33 U.S. C.A. § 203.) Instead, again according to Needham's own testimony, he did not sound the signal until he was within 400 feet of the bend. That was only the first of his navigational faults.

Another was his failure to have a deckhand posted at the forward end of the Tuscarora as a lookout during his approach to the bend. Since the Kathryn M. is about fifty feet in length and the Tuscarora about two hundred, such an observer would have occupied a position about two hundred and fifty feet closer to the point where the river resumes its generally southerly course, and would have been in a better position to observe northbound traffic than was Needham.

After rounding the bend the Kathryn M., and her tow continued her southerly course, headed toward the Congress Street Bridge, aforesaid, which has an east and a west draw. As the tow was approaching the bridge Needham observed a northbound tow in the middle of the east draw. Under such circumstances prudent navigation required that Needham send his tug and tow through the west draw, which was on his starboard. He claimed, however, that the west draw was not generally used. Conceding that to be the fact, and conceding also that the unidentified northbound tow was in the exact center of the east draw, the accident could have been avoided if Needham had used reasonable care.

The east draw is 181 feet wide and if, as Needham stated, the northbound tow was in the middle of the east draw, there was at least 70 feet of water between her port side and the westerly side of the east draw. The Kathryn M. tow was 41½ feet wide. Needham testified that tows of that width passed each other without incident in the New York Barge Canal and other streams having a width of less than 100 feet, so that there was ample room for his tow to pass the northbound tow without damage. It may be added that if Needham had sounded his signal when he was half a mile from the bend the master of the vessel which had the northbound tow in charge would have had an opportunity to direct her course through the east side of the east draw, thereby providing even more room for the Kathryn M., and tow.

Respecting the question of damage to the Tuscarora resulting from the accident, I was impressed with the testimony of Julius Pahl, her bargee. He stated that his barge struck the stone abutment a very hard blow, and that immediately after the collision he examined the hull of the Tuscarora and found two dents in her steel plates and a scored rubbing strip on her port side, none of which had been there prior to the accident.

The respondents-impleaded contended that the accident could not have happened in the manner testified to by the bargee since the face of the abutment is oblique, being narrowest at the top, and having its widest point at the bed of the river; that the sides of the Tuscarora were straight and formed a 90 degree angle with her bottom; that by reason thereof her bottom would have struck the abutment and not her port side plates, since they would have been some distance from the abutment because of its sloping face. The fact is, however, that the Tuscarora had a curved bilge, the curve extending approximately to the 2 foot mark. Further, it appears from the photograph (marked Kathryn exhibit 2) that the stones composing the abutment do not present a flat surface but are rounded in the center.

I am satisfied that the collision of the Tuscarora with the stone abutment of

the bridge, with its resultant damage, was caused solely by the carelessness and negligence of Needham in navigating the Kathryn. M., and her tow, as aforesaid.

Accordingly, a decree will be entered in favor of libelant. Submit proposed findings of fact, conclusions of law and decree in conformity with the foregoing.